*ORIGINAL*   530

1   PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

*FILED*

2   Name *BROWN    GREGORY    L.*
        (Last)      (First)      (Initial)

JUL 2 2 2008

3   Prisoner Number   *J-82241*

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

4   Institutional Address   *900 QUEBEC AVE.;    CORCORAN, CA*

5   *IN PRO SE*

6

7                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA

*MMC*

8   *GREGORY L. BROWN*                    )
    (Enter the full name of plaintiff in this action.)  )
9                                         )   CV
                   vs.                    )  08  Case No.  **3502** *(PR)*
10  *KEN CLARK (WARDEN)*                  )      (To be provided by the clerk of court)
                                          )
11  _____              )   **PETITION FOR A WRIT
                                          )   OF HABEAS CORPUS**
12  _____              )
                                          )
13  _____              )   *Evidentiary Hearing*
                                          )
14  (Enter the full name of respondent(s) or jailor in this action)  )   *Requested*
                                          )
15  _____              )

16                    Read Comments Carefully Before Filling In

17  When and Where to File

18         You should file in the Northern District if you were convicted and sentenced in one of these

19  counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20  San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21  this district if you are challenging the manner in which your sentence is being executed, such as loss of

22  good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23         If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24  one of the above-named fifteen counties, your petition will likely be transferred to the United States

25  District Court for the district in which the state court that convicted and sentenced you is located. If

26  you are challenging the execution of your sentence and you are not in prison in one of these counties,

27  your petition will likely be transferred to the district court for the district that includes the institution

28  where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS   *1*

1  <u>Who to Name as Respondent</u>

2       You must name the person in whose actual custody you are.  This usually means the Warden or

3  jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5  respondents.

6       If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  <u>A.  INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11       1.  What sentence are you challenging in this petition?

12            (a)    Name and location of court that imposed sentence (for example; Alameda

13                   County Superior Court, Oakland):

14  <u>Superior Court of San Francisco</u>      <u>850 Bryant St, S.F., CA 94103</u>

15                   Court                              Location

16            (b)    Case number, if known <u>No. 159271</u>

17            (c)    Date and terms of sentence <u>May 25, 1995; 56 years to life.</u>

18            (d)    Are you now in custody serving this term?  (Custody means being in jail, on

19                   parole or probation, etc.)        Yes <u>X</u>      No _____

20                   Where?

21                   Name of Institution: <u>SATF - Corcoran State Prison</u>

22                   Address: <u>900 Quebec Ave.; Corcoran, CA 93212</u>

23       2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  <u>Count I: Conspiracy to commit murder; Penal Code 182.1, 187</u>

27  <u>Count II: Attempted murder; Penal Code 664/187</u>

28

1    3. Did you have any of the following?

2        Arraignment:                          Yes _X_        No _____

3        Preliminary Hearing:                  Yes _X_        No _____

4        Motion to Suppress:                   Yes _____      No _X_

5    4. How did you plead?

6        Guilty _____    Not Guilty _X_    Nolo Contendere _____

7        Any other plea (specify) _____

8    5. If you went to trial, what kind of trial did you have?

9        Jury _X_    Judge alone_____    Judge alone on a transcript _____

10   6. Did you testify at your trial?           Yes _____      No _X_

11   7. Did you have an attorney at the following proceedings:

12        (a)    Arraignment                    Yes _X_        No _____

13        (b)    Preliminary hearing            Yes _X_        No _____

14        (c)    Time of plea                   Yes _____      No _X_    N/A _X_

15        (d)    Trial                          Yes _X_        No _____

16        (e)    Sentencing                     Yes _X_        No _____

17        (f)    Appeal                         Yes _X_        No _____

18        (g)    Other post-conviction proceeding   Yes _X_    No _____

19   8. Did you appeal your conviction?          Yes _X_        No _____

20        (a)    If you did, to what court(s) did you appeal?

21               Court of Appeal                Yes _X_        No _____

22               Year: _1998_    Result: _Affirmed_____

23               Supreme Court of California    Yes _X_        No _____

24               Year: _1998_    Result: _Denied_____

25               Any other court                Yes _X_        No _____

26               Year: _1998-_   Result: _Federal Courts_____

27

28        (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS                    3

1        petition?                               Yes _____    No _X_

2    (c)    Was there an opinion?               Yes _____    No _X_    N/A _X_

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                               Yes _____    No _X_    N/A _X_

5        If you did, give the name of the court and the result:

6        _____

7        _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?        Yes _X_    No_____

10       [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition.  You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28

15   U.S.C. §§ 2244(b).]

16       (a)    If you sought relief in any proceeding other than an appeal, answer the following

17              questions for each proceeding.  Attach extra paper if you need more space.

18       I.    Name of Court: _Superior Court of San Francisco_

19              Type of Proceeding: _State Habeas Corpus Petition_

20              Grounds raised (Be brief but specific):

21              a. _Ineffective Assistance of Trial and Appellate Counsel_

22              b. _Prosecutorial Misconduct_

23              c. _Juror gave false answers/statements during voir dire_

24              d. _Conviction relies on less than proof beyond a reasonable doubt of every element of the crimes charged_

25              Result: _Denied; see Attachment #1_ Date of Result: _July 5, 2007_

26       II.   Name of Court: _Court of Appeal of the State of California_

27              Type of Proceeding: _State Habeas Corpus Petition_

28              Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS    • 4

1    a. *Ineffective Assistance of Trial and Appellate Counsel*

2    b. *Prosecutorial Misconduct*

3    c. *Juror gave false answers/statements during voir dire*

4    d. *Reasonable doubt of every element of the crimes charged*. Conviction relies on less than proof beyond a

5    Result: *Denied; see Attachment #2* Date of Result: *May 30, 2007*

6    III.    Name of Court: *Supreme Court of California*

7    Type of Proceeding: *State Habeas Corpus Petition*

8    Grounds raised (Be brief but specific):

9    a. *Ineffective Assistance of Trial and Appellate Counsel*

10   b. *Prosecutorial Misconduct*

11   c. *Juror gave false answers/statements during voir dire*

12   d. *doubt of every element of the crimes charged*. Conviction relies on less than proof beyond a reasonable

13   Result: *Denied; see Attachment #3* Date of Result: *Jan. 30, 2008*

14   IV.    Name of Court: _____

15   Type of Proceeding: _____

16   Grounds raised (Be brief but specific):

17   a. _____

18   b. _____

19   c. _____

20   d. _____

21   Result: _____ Date of Result: _____

22   (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23   Yes _____    No _X_

24   Name and location of court: _____

25   B. GROUNDS FOR RELIEF

26   State briefly every reason that you believe you are being confined unlawfully. Give facts to

27   support each claim. For example, what legal right or privilege were you denied? What happened?

28   Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS    - 5

1   need more space. Answer the same questions for each claim.

2       [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5       Claim One: — SEE Following Pages —

6

7       Supporting Facts: SAME AS Above

8

9

10

11      Claim Two: SAME AS Above

12

13      Supporting Facts: SAME AS Above

14

15

16

17      Claim Three: SAME AS Above

18

19      Supporting Facts: SAME AS Above

20

21

22

23      If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25      N/A

26

27

28

## B. Grounds For Relief

## Claim One

Greg's right to a fair trial and due process, as guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution, was violated when the prosecutor maliciously and intentionally introduced false and unsupported and deceitful material statements at trial. Supporting cases, but not limited to: <u>Darden v. Wainwright</u>, 477 U.S. 168 (1986); <u>Brecht v. Abrahamson</u>, 509 U.S. 619 (1993); <u>Donnelly v. DeChristofoeo</u>, 416 U.S. 637; <u>In re Winship</u>, 397 U.S. 358 (1970); <u>Berger v. United States</u>, 295 U.S. 78 (1935); <u>Miller v. Pate</u>, 386 U.S. 1 (1967).

It was prosecutorial misconduct and malicious prosecution for formal San Francisco Prosecutor Floyd "Andrews" to use false and unsupported and deceitful material statements during his "Closing Arguments" at trial to acquire Greg's conviction for conspiracy to commit murder and attempted murder of Robin Williams. In closing, Andrews told the jury that Wayn Fain wrote the note "for Gregory Brown," (RT 1349.) [1] and "... he (Greg) can get her (Robin Williams) out to Jerrold Avenue and shoot her and leave her dead through the other two (Wanda Fain and Joseph Diggs)." (RT 1349.) Andrews further repeatedly exhorted the jury to being in a "guilty" verdict, not based on the evidence, but "because

[1] All Reporter's/Clerk's Transcripts referred to in these papers can be found in "Exhibit-A" attached hereto.

6

Continuation Of "Claim. I; Page #2

1   they did it." (RT 1350.)    The trial record is devoid
2   of any evidence to support any of those accusations.
3   There was no evidence introduced at trial that showed
4   Fain wrote the note "for Gregory Brown." There was
5   no evidence introduced at trial that showed Greg had
6   any connection to the trip that Fain, Diggs and Williams
7   took to Jerrold Avenue. There was no evidence
8   introduced at trial from which a rational inference may
9   be made that Greg agreed with Fain, Diggs or anyone
10  else to take Robin Williams' life, or to do her any harm
11  at all. And nowhere in the trial record is there any
12  evidence as to who actually shot Williams.

13      As demonstrated above, not only did Andrews
14  failed to limit the scope of his closing arguments
15  to the evidence presented at trial but he also
16  deliberately and consciously introduced numerous false
17  and unsupported material statements which rested
18  exclusively on the issue of guilt. Additionally,
19  Andrews' exhortations of the jury to bring in a "guilty,"
20  verdict, by any means other than the evidence, "because
21  they did it" amount to malicious prosecution and
22  several instances of prosecutorial misconduct because:
23  (1) it was contrary to the evidence presented at trial;
24  (2) it was an injection of his personal opinion or belief;
25  (3) it influenced and inflamed the jury's prejudices
26  against Greg; (4) it encouraged the jury to

## Continuation Of "Claim '1'; Page 3

1  disregard the court's instructions concerning innocence
2  and guilt; and (5) it diverted the jury's attention from
3  its duty to decide the case on the merit of the evidence
4  presented at trial.

5       But, just as equally prejudicial, it negated the
6  fact that other people could have been responsible for
7  the shooting of Robin Williams.  On cross-examination,
8  Williams was questioned about various persons who might
9  bear ill will towards her.   In January 1994, just a
10  year prior to her shooting, Robin Williams was convicted
11  of a residential burglary, and named three black males
12  who were also involved.  (RT 573, 587-588, 641.)

13  After that burglary, Corky, the boyfriend of the woman
14  whose house she had burglarized, beat her up. (RT 583.)
15  Williams had also incurred drug debts in the past.
16  (RT 576, 580.)  However, she denied having any drug
17  debts on February 7, 1995, and did not remember ever
18  being threatened by drug dealers to whom she owed
19  money. (RT 576, 580, 582.)  She said that she knew
20  Irwin Berry at Sunnydale, but did not remember him
21  hitting her with a gun because of some debts she owed
22  him. (RT 582.)  She specifically denied owing any
23  money to a man named "Tails" from the Sunnydale Area,
24  and said that she did not remember him coming up to
25  her the night before February 7, 1995 and pointing a
26  gun at her. (RT 581-582.)  However, Darnie Hayes

## <u>Continuation Of "Claim I"; Page #4</u>

1  testified that she was talking on the telephone with a
2  friend at her home in the Sunnydale Projects on the
3  afternoon of February 6, 1995 when the friend said,
4  "Oh, my God, Tails pulled a gun on Robin." Robin
5  referred to Robin Williams. (RT 1005.) Hayes also
6  testified that sometime during the last couple of months
7  Phoebe's apartment at 56 Santos had caught on fire.
8  Williams and Phoebe were once roommates at 56 Santos.
9  (RT 1005-1006.) Over the years, Williams had gotten
10 into fights at Sunnydale. (RT 584-585.) Williams
11 admitted that she might have some enemies around
12 the city. (RT 586.)

13     Andrews' false and unsupported material statements
14 implanted in his closing arguments, whether individually
15 or collectively, so infected the trial outcome as to
16 create a genuine effect on the jury's verdict, especially
17 when considering the fact that the trial judge <u>did not</u>
18 <u>instruct</u> the jury to disregard the improper statements.
19 There is absolutely no way a rational jury could have
20 found Greg guilty of the crimes accused absent the
21 mentioned statements in Andrews' closing.
22     Prosecutor Andrews' intentional and malicious use
23 of false and deceitful material statements in his
24 "Opening Statements" at trial were so improper
25 that they infected the trial with unfairness as
26 to make Greg's resulting convictions a denial of due

## Continuation Of "Claim I", Page # 5

1. process and a fair trial. Andrews' opening statements
2. alleged, "She (Robin Williams) was shot because she made
3. a statement to the police about Gregory Brown, about
4. him selling drugs, about him having a gun. She was shot
5. to punish her for that statement and to prevent her from
6. testifying in future court appearances." (RT 314.)
7. Andrews failed to introduce any evidence at trial as to
8. why Robin Williams was shot. Andrews introduced no
9. evidence that Williams was shot because she made a
10. statement to the police "about Gregory Brown." Andrews
11. introduced no evidence that Williams was shot because her
12. statement mentioned Greg "selling drugs." Andrews
13. introduced no evidence that Williams was shot because
14. her statement mentioned Greg "having a gun." Andrews
15. introduced no evidence that Williams "was shot to
16. punish her for that statement" to the police.
17. Andrews introduced no evidence that Williams was shot
18. "to prevent her from testifying in future court
19. appearances." Furthermore, Andrews completely
20. failed to introduce any evidence at trial as to _why_
21. Williams was shot, and there was no trial evidence
22. as to why.
23.    Moreover, Robin Williams' trial testimony totally
24. contradicted the improper statements given by Andrews in
25. his opening statements, while at the same time
26. exonerating Greg on all charges relating to her shooting.

<u>Continuation Of "Claim I", Page #6</u>

1  Williams testified at trial that on January 6, she was
2  visiting Greg at 126 Blythdale, when the police came.
3  She saw a gun in Greg's hand and a bag of crack in
4  the other. (RT 511.) She made a statement to the police
5  as to what she saw. (RT 513.) Some days later she
6  was at a friends house when Wanda "Fain" delivered
7  a note to her, that included a photo of her taken some
8  years before by Greg. Greg was nearby when the note
9  was delivered, standing outside on a porch. (RT 515.)
10 Fain said Greg wanted to talk to her. (RT 517.)
11 She did not speak to Greg because she considered the
12 note threatening and was scared. (RT 518.) About a
13 week and a half later, she met Greg on the street
14 and they spoke. He asked her to stay out of sight,
15 and not to testify at his upcoming hearing, and in
16 return he "would take care of" her as long as she
17 didn't testify. (RT 519.) She was satisfied with
18 the conversation and returned to her regular visits to
19 126 Blythdale, going there about every other day.
20 She went there to talk to Greg and they were friends.
21 (RT 520.) Greg never threatened her, and she
22 believed he had no intention of hurting her. (RT 557.)
23       Andrews was aware that Williams would testify
24 as she did, because it was relatively a recital of her
25 preliminary hearing testimony. (RT 11-16; 51-52.)
26 Nevertheless, Andrews deliberately, consciously and

<u>Continuation Of "Claim I"; Page # 7</u>

1  maliciously used false and deceitful material statements
2  in his opening statements to manipulate the jury.
3  This fact is highlighted by Andrews' calculated
4  (and successful) efforts to paint Greg as a heartless
5  dope dealer who has previously captured and corrupted
6  the victim, Robin Williams. Thus, for example, in his
7  opening statements Andrews said:

8      "Robin is going to tell you that she is addicted
9      to cocaine, that she had been supplied
10     cocaine by Gregory Brown and other people
11     ...., that she did a lot of things to
       get her poison. She'd go to Gregory Brown
       and get drugs there. She's traded drug
12     for sex with Mr. Brown."

14  (RT 315, line 28; 316, line 1-7.)  Of course, there was
15  no evidence adduced at trial to support this assertion.
16  Absent the maliciously false and deceitful statements
17  embedded in Andrews' opening statements, no rational
18  jury could have reached a guilty verdict against Greg
19  because there was simply no evidence introduced at
20  trial connecting him to the shooting of Robin Williams.
21  Indeed, the improper statements created such a
22  substantial and injurious effect on the jury's decision
23  as to render Greg's convictions unconstitutional.

24  / / / /

25  / / / /

26  / / / /

12

## Continuation Of "Claim I"; Page #8

1   Greg's right to a fair trial and due process, under
2   the Fifth and Fourteenth Amendments of the United
3   States Constitution, was violated as a result of several
4   instances of prosecutorial misconduct as set forth herein.
5       Based on the above, the Court must grant habeas
6   relief to Greg on this ground and enter a judgment
7   of acquittal because there is no evidence to support
8   a re-trial; and/or any other relief the Court deems
9   fair and just. Greg also asks the Court to hold an
10  evidentiary hearing so that he can produce the
11  prosecutorial misconduct evidence in which he contends.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

Claim Two

2

3    Greg's Right to Effective Assistance of trial Counsel,
4   as guaranteed under the Fifth, Sixth and Fourteenth
5   Amendments of the United States Constitution, was violated
6   when counsel (1) failed to object to the prosecutor's false
7   and unsupported material statements at trial;
8   (2) failed to challenge questionable overt acts; and
9   (3) failed to use preemptory challenge to excuse a bias
10   juror. Supporting cases, but not limited:
11   Strickland V. Washington, 466 U.S. 668 (1984);
12   Cronic V. United States, 466 U.S. 648 (1984); Brecht V.
13   Abrahamson, 507 U.S. 619 (1993); Donnelly V. DeChristoforo,
14   416 U.S. 637 (1974).
15       As stated in "Claim One" and supported by the
16   record, during Closing Arguments, the prosecutor told the
17   jury that Wanda Fain wrote the note "for Gregory Brown,"
18   (RT 1349) and ". . . he (Greg) can get her (Robin
19   Williams) out to Jerrold Avenue and shoot her and leave
20   her dead through the other two (Fain and Joseph Diggs)."
21   (RT 1349.) The prosecutor further repeatedly exhorted
22   the jury to bring in a "guilty" verdict, not based on
23   the evidence, but "Because they did it." (RT 1350.)
24   There was not a scintilla of evidence presented at
25   trial that supports any of those false material
26   statements. Any reasonably effective counsel would
27   have fervently objected to each and every one of those
28   improper statements, particularly, in light of the

14.

Cont. "Claim 2"; Page #2

1 | fact that closing arguments are limited to the issue
2 | in the case and the evidence that has been presented.
3 | Counsel's non-objections to the false and unsupported
4 | material statements allowed the prosecutor to:
5 | (1) argue facts that are not supported by the evidence
6 | in the record; (2) inject his personal beliefs and
7 | opinions; (3) influence and inflame the jury's
8 | prejudices against Greg; (4) encourage the jury to
9 | disregard the court's instruction regarding innocence
10 | and guilt; and (5) divert the jury's attention from
11 | its duty to decide the case on the merit of the
12 | evidence presented at trial. Moreover, counsel's
13 | non-objections gave credence to the prosecutor's
14 | baseless opening statements.
15 | Had counsel objected to the improper material
16 | statements given by the prosecutor in his closing
17 | arguments, the objections would have undoubtedly
18 | resulted in the judge ordering the jury to disregard
19 | the statements which would have put the jury on notice
20 | that they are not allowed to consider the improper
21 | statements, and that alone could have changed the
22 | outcome of the trial. However, counsel's failure to
23 | object to the false and unsupported material statements
24 | resulted in and contributed to and proximately
25 | caused Greg's convictions for the crimes charged
26 | and subjected him to an unfair trial, a bias jury,
27 | prosecutorial misconduct, and a conviction on less than
28 | proof beyond a reasonable doubt. Indeed,

15

"Claim 2"; Page #3

1  counsel's NON-objections to the statements in
2  question amount to ~~defective~~ and ineffective
3  representation.
4      Trial counsel's failure to challenge the validity
5  and the legality of the overt acts in the motion to
6  dismiss (Calif. Penal Code Sec. 995 motion.) constitutes
7  ineffective trial representation. (CT 70, 152; RT 27.)
8  To support a crime of conspiracy, the prosecution
9  must prove the commission of an overt act by one or
10  more of the parties engaged in the agreed upon
11  conspiracy. In this case, only four overt acts in
12  support of the conspiracy to commit murder of
13  Robin Williams was related to Greg (Nos. 2, 4, 5,
14  and 6.) Overt Act No. 2 alleged that Greg took a
15  photo and gave it to Wanda Fain; No. 4 alleged that
16  Greg accompanied Fain to deliver a note; No. 5
17  alleged that Greg encouraged Fain and Joseph Diggs
18  to murder Robin Williams; and No. 6 alleged that
19  Greg and Fain resided at 126 Blythdale. (CT 1-4.)
20  However, there was no finding of overt act No. 6;
21  no evidence to support No. 5; and Nos. 2 and 4
22  fail because (1) there is no evidence of an agreement
23  between Greg and anyone to commit murder and
24  (2) they do not meet the legal requirement of an
25  overt act. In light of the fact that Greg pled
26  not guilty to the crimes charged (CT 9-11), any
27  reasonably effective counsel would have moved to
28  challenge all evidence against his client in which the

16

"Claim 2", Page # 4

1  prosecution relies upon to obtain a conviction. It is
2  reasonable to assume that had counsel challenged the
3  overt acts, the prosecution would have been forced to
4  produce sufficient evidence to support each act or run
5  the risk of having one or more acts dismissed.
6  As shown herein, the overt acts were either not acts
7  in and of themselves or unsupported or lacked finding.
8  Therefore, had counsel challenge the overt acts it is
9  more than likely that one or more or all of the acts
10 would have been dismissed which would have further
11 weaken the prosecution's case or resulted in the entire
12 case against Greg being dismissed, because, the
13 essence of a conspiracy lies within the commission
14 of an overt act.
15      Here, the prosecution's case against Greg is
16 non-existent by most standards, therefore, a minimal
17 of error such as the failure to challenge the overt acts
18 contributed to or caused Greg to be subjected to an
19 unfair trial, a bias jury, prosecutorial misconduct, and
20 a conviction on less than proof beyond a reasonable doubt.
21      Trial counsel's failure to use preemptory challenge
22 to excuse a bias juror from the jury panel constitutes
23 ineffective trial representation. During voir dire,
24 juror John Elwood was questioned and answered:
25      Mr. Fuetsch (co-defendant Wanda Fain's counsel):
26 "Does anyone have a problem or would they have a
27 problem with following the instructions of the Court
28 even if the result that would be reached by following the

17

<u>Continuation Of "Claim 2", Page # 5</u>

1  instructions of the Court were contrary to your gut
2  reaction in a case as serious as the that's charged here?"
3      Prospective Juror: "I think I would have a problem
4  with it."
5      Mr. Fuetsch: "... could you explain what you mean
6  by you would have a problem with that?"
7      Prospective Juror: "I believe there's a higher
8  authority than legal authority that is like moral authority,
9  and to follow like a set of rules rather than more of a
10 moral thing, I think I would be hardpressed to follow the
11 set of rules that are outlined by law."
12     "... but I think if you misconstrue the constitution
13 or broaden its actual authority, then I think that
14 could be potentially wrong."
15 (RT 132-133.)
16     Mr. Arian (Greg's trial counsel):
17     "Mr. Elwood, I heard you say something about
18 broadening the authority of the constitution. Do you recall
19 that comment?"
20     Prospective Juror: "I do."
21     Mr. Arian: "I wonder if you could say any more
22 about that. I didn't get your complete thought."
23     Prospective Juror: "My thought is a lot of, let's
24 say, somebody's on trial, the jurors sit through the
25 entire trial, they have a gut feeling that these defendants
26 are, let's say, guilty, but a lot of circumstantial

<u>Continuation Of "Claim 2", Page #6</u>

1  EVIDENCE HAS been brought IN AND It's been found -- or A
2  legal issue HAS been brought up, A minor legal issue that
3  speaks to their innocence. You're supposed to think
4  they're innocent even though they're guilty, because It's
5  A legal argument and It takes precedence over how you feel."
6      Mr. Arian: "you're saying that AS A juror your gut
7  REACTION is very important And you're going to pay A lot
8  of Attention to that?"
9      Prospective Juror: "If you've listened to all the
10 facts And you say, yes, they ARE innocent or guilty, but
11 Some legal precedence makes you dismiss that, then I
12 have a big problem with that."
13     Mr. Arian: "You might not be able to do that?"
14     Prospective Juror: "No, I would not."
15     Mr. Arian: "Would that hold if the judge At the
16 close of the case instructed you that you were to consider
17 this evidence in A certain way and the instructions of the
18 judge went counter to the feelings you just described."
19     Prospective Juror: "I really don't know sitting
20 here right now."
21     Mr. Arian: "Would you have trouble with It?"
22     Prospective Juror: "I would have major problems."
23 (RT 142-143.)
24     The Court: "At this point does any party wish
25 to enter A challenge for cause?
26 / / / /

## Continuation Of "Claim 2", Page #7

1   But before you do that, Mr. Elwood, I was little
2  unclear about your statements.
3      Let me just read this question to you again:
4  It [sic] important that I have your assurance that you
5  will without reservation follow my instructions and
6  rulings on the law and will apply that law to the case.
7  To put it differently, whether you approve or disapprove
8  of my instructions, it is your solemn duty to accept as
9  correct my statements of the law. You may not
10 substitute your own idea of what you think the law
11 ought to be.
12      Would you be able to follow the law as given
13 by me in this case?"
14      Prospective Juror: "I would, but I may have a
15 problem with that, internal conflict."
16 (RT 158-159.)
17      As demonstrated, juror Elwood's responses during
18 voir dire were evasive and misleading and concealed his
19 unwillingness to follow the court's instructions. Any
20 reasonably effective counsel would have used a preemptory
21 challenge to excuse juror Elwood from the jury panel as a
22 result of his explicit or implicit allegiance to his "gut"
23 feelings opposed to the law and instructions given by
24 the court. Moreover, Elwood's declaration illustrates
25 an abundance of juror misconduct (CT 451-452.),
26 therefore, it is reasonable to assume that Elwood's

1

Continuation Of "Claim Two"; Page # 8

2

3  reliance on his gut feelings during deliberations, rather
4  than the Court's instructions, was influential in the jury's
5  decision to find Gree guilty of the crimes charged,
6  particularly since the verdicts were contrary to law.
7  Counsel's failure to excuse potential bias juror Elwood
8  from the jury panel contributed to or caused Gree's
9  deprivation of a fair trial and impartial jury.
10      Gree's right to effective assistance of trial counsel
11  as guaranteed by the Fifth, Sixth and Fourteenth
12  Amendments of the United States Constitution was
13  violated when counsel failed to (1) object to the
14  prosecutor's false and unsupported material statements
15  during trial; (2) challenge questionable overt acts
16  regarding the conspiracy charge; and (3) use
17  preemptory challenge to excuse a bias juror from the
18  jury panel.
19      Based on the above, the Court must grant Gree
20  habeas relief on this claim and enter a judgment of
21  acquittal because there is no evidence to support a
22  re-trial; and/or grant Gree any other relief the Court
23  deems fair and just. Gree also asks the Court to hold
24  an evidentiary hearing so that he can produce the
25  ineffective assistance of trial counsel evidence in which
26  he contends.
27  / / / /
28  / / / /

21

1

*Claim Three*

2

3  Greg's right to effective assistance of appellate
4  counsel, as guaranteed under the Fifth, Sixth, and
5  Fourteenth Amendments of the United States Constitution,
6  was violated when counsel failed to discover and include
7  non-frivolous material claims into the appellant's brief.
8  Supporting cases, but not limited to: *Smith V. Robbins*,
9  528 U.S. 259 (2000); *Brecht V. Abrahamson*, 507 U.S.
10  619 (1993); *Donnelly V. DeChristoforo*, 416 U.S. 637(1974).
11  It was ineffective and defective representation
12  of appellate counsel when counsel failed to raise the
13  following claims on appeal: (1) Prosecutorial misconduct,
14  as fully stated herein at "Claim One"; (2) Ineffective
15  assistance of trial counsel, as fully stated herein at
16  "Claim Two"; (3) Greg's convictions are based on less
17  than proof beyond a reasonable doubt of every element
18  of the crimes charged, as fully stated below at
19  "Claim Four"; and (4) Juror gave false answers/
20  statements during voir dire, as fully stated below at
21  "Claim Five." As demonstrated, none of these claims
22  are frivolous.
23  Any reasonably effective appellate counsel would
24  have raised each of the mentioned claims on direct
25  appeal or at least filed a motion in the Court of
26  Appeal to expand his appointment in order to file
27  and consolidate a state habeas corpus petition
28  concerning these claims. Indeed, the mentioned

"Claim Three", Page #2

1 | NON-frivolous claims, if only raised, would have
2 | provided evidentiary support for the claims raised
3 | in the appellant's brief and contributed to the
4 | perseverance of a successful appeal. However,
5 | Appellate counsel's failure to raise the claims in
6 | question deprived Greg of a prosperous and
7 | triumphant appeal and the right to effective
8 | representation of counsel on appeal in violation of his
9 | Fifth, Sixth, and Fourteenth Amendments of the
10 | United States Constitution.
11 |     Based on the above, the Court must grant Greg
12 | habeas relief on this claim, and any other relief the
13 | Court deems fair and just. Greg also asks the Court
14 | to hold an evidentiary hearing so that he can
15 | produce the ineffective assistance of appellate
16 | counsel evidence in which he contends.

23

1

CLAIM FOUR

2

3     GREG's right to a fair trial and due process,
4  as guaranteed under the Fifth and Fourteenth
5  Amendments of the United States Constitution, was
6  violated as a result of his convictions being based on
7  less than proof beyond a reasonable doubt of
8  every element of the crimes charged. Supporting
9  cases, but not limited to: In re Winship, 397
10  U.S. 358 (1970); Leavitt V. Vasquez, 875 F.2d
11  260 (9th Cir. 1989).

12     No rational trier of facts could have found
13  the essential elements of the crimes charged against
14  GREG, beyond a reasonable doubt.

15     On March 17, 1995, Prosecutor Floyd Andrews
16  filed his Information in this case. Count I of the
17  Information accused GREG of conspiracy to commit
18  murder (CT 1.) and Count II accused him of
19  attempted murder (CT 4.). The Information alleged
20  that the attempted murder was willful, deliberate,
21  and premeditated. (CT 5.) As to the attempted
22  murder count, the Information also alleged that
23  GREG personally inflicted great bodily injury upon
24  Robin "Williams." (CT 5.) The Information set
25  out 14 overt acts in support of the conspiracy
26  accusation, naming GREG in only four overt acts
27  (Nos. 2, 4, 5 and 6.). (CT 1-4.) Overt Act No. 2 accused
28  ////

24

## Continuation Of "Claim 4" Page #2

1  Greg of taking a photo and giving it to Wanda "Fain";
2  No. 4 accused Greg of accompanying Fain to deliver a
3  note; No. 5 accused Greg of encouraging Fain and
4  Joseph "Diggs" to murder Robin Williams; And No. 6 accused
5  Greg and Fain of residing at 126 Blythdale.  Overt act
6  Nos. 2 and 4 are meaningless in the context of the
7  conspiracy charge because there was no evidence of any
8  agreement, between Greg and another or others
9  to commit murder.  But, more importantly, those two
10 "acts" do not meet the legal requirement of an
11 "overt act."   The jury made a determination that Greg
12 encouraged Fain and Diggs to murder Robin Williams
13 (Verdict, Overt Act No. 5), but there is not a shred of
14 admissible evidence presented at trial from which this
15 conclusion could logically be reached.  And there was
16 no finding of overt act No. 6.  (Verdict, Overt Act No. 6.)
17 There was no sufficient evidence of an overt act
18 supporting the charge of conspiracy to commit murder.
19 The crime of conspiracy is defined in the California Penal
20 Code (Sec. 182, subd. (a)(1), 184) as two or more persons
21 conspiring to commit any crime, together with proof of
22 the commission of an overt act by one or more of the
23 parties to such agreement in furtherance thereof.
24 Conspiracy is a specific intent crime.  The specific
25 intent required divides logically into two elements
26 (a) the intent to agree, or conspire, and (b) the intent

<u>Continuation Of "Claim 4", Page #3</u>

1 to commit the offense which is the object of the conspiracy.
2 To sustain a conviction for conspiracy to commit murder,
3 the prosecution must show not only that the conspirators
4 intended to agree <u>but also</u> that they intended to kill
5 the victim.

6     The evidence introduced at trial, as it pertains to
7 Greg may be summarized as follows:

8     1.)   He was arrested on January 6, 1995, at
9 126 Blythdale, while in possession of a handgun and
10 crack cocaine. Robin Williams made a statement to
11 police incriminating Greg.

12     2.)   He was present when a purportedly threatening
13 note, written by co-defendant Wanda Fain, on paper from
14 a notebook belonging to Fain, was delivered to Williams.
15 The note came with a photograph of her taken by Greg
16 five years before.

17     3.)   Greg and Williams met, and Greg agreed to
18 provide Williams unspecified remuneration if she would
19 refrain from testifying against him at an upcoming
20 preliminary hearing. The two resumed their previously
21 friendly relationship.

22     4.)   Greg was present at 126 Blythdale on
23 February 7, until about 4:00 to 6:30 P.M. that evening.
24 Williams, Fain and Diggs left to take the bus about 7:30 P.M.
25 / / / /
26 / / / /

## Continuation Of "Claim 4"; Page #4

1    First, the January 6, arrest could only be considered on
2    the issue of Greg's _motive_ to commit the crimes alleged.
3    (RT 347-348; 1213-1215.) Clearly, "motive" is not an
4    essential element of either crime charged. Indeed,
5    motive is different from intent (1 Witkin, California
6    Criminal Law (2nd edition 1988), sec. 100, p. 118), and
7    does not establish intent.

8    Second, the alleged threatening note was written by Fain
9    on her paper. (RT 727-729, 935.) It was delivered
10   about three weeks before the February 7, 1995 shooting of
11   Williams. A reasonable trier of facts could infer that
12   Greg was associated with the note, but it is not
13   reasonable to interpret the note as evidencing an agreement
14   between Fain and Greg to commit any crime, let alone an
15   agreement to kill Williams. Furthermore, about a week
16   and a half after Williams received the note, or about two
17   weeks before February 7, 1995, Williams and Greg
18   reconciled. (RT 520, 545-546, 557.) From that time
19   forward, up to and including February 7, 1995, Williams
20   visited with Greg every day or every other day. There is
21   no evidence to suggest that these approximately seven to
22   fourteen visits were anything but friendly. Indeed, Williams
23   testified that Greg specifically indicated to her that he
24   had no intention to hurt her. (RT 557.)

25   Third, given the evidence that Greg either lived at
26   126 Blythdale or was there often and Williams considered

## Continuation Of "Claim 4"; Page #5

1  him her friend, nothing can be inferred from Greer's
2  presence at or absence from 126 Blythdale on the day
3  Williams was shot. Williams' trial testimony varied as to
4  when Greer left on that day. (RT 547-530.) She also
5  testified that she did not remember when he left. (RT 551-
6  552.)  At the March 6, 1995 preliminary examination,
7  She testified that he left early, around 4:00 P.M.
8  (RT 547-549, 551.)

9       Nowhere in the record is there any evidence from which
10  a rational inference may be made that Greer agreed with
11  ANYONE to take Robin Williams' life, or to do her any harm
12  at all.  There is no evidence which even arguably shows
13  that Greer had an intent to kill Williams. There is
14  no evidence linking Greer to any weapon associated with
15  the shooting of Williams.  There is no other physical
16  evidence linking Greer to the shooting of Williams. There is
17  no evidence of any discussions among Greer, Fair, and
18  Diggs regarding killing Williams.  There is no evidence
19  that Greer had any connection to the trip that Fair, Diggs,
20  and Williams took to Third Street.  And there is nothing
21  in the statements that Fair and Diggs gave to the police
22  that connected Greer to the shooting of Williams.

23       The fact that Greer knew Fair and perhaps Diggs is
24  not sufficient.  Mere association is not enough to
25  establish the essential elements of either crime alleged.
26  ////

28

<u>Continuation Of "Claim 4"; Page #6</u>

1   As shown above, there is no evidence to support
2 the essential elements of the crime of conspiracy to
3 commit murder.

4   Even less evidence exists with respect to the finding
5 of the crime of Attempted murder of Robin Williams.
6 Where, as here, the prosecution has charge the attempt
7 to be "willful, deliberate, and premeditated,"
8 it must adduce evidence from which it may be
9 rationally inferred that, "... the would-be slayer
10 (weighed and considered) the question of killing and the
11 reason for and against such choice and, having in mind
12 the consequences, decides to kill another human being."
13 CALJIC 8.67.

14   No such evidence exists in the record. Nor is there
15 any evidence of the specific intent element needed to
16 satisfy the Attempted murder requirement. Such intent
17 must be shown at the time of the overt act by which
18 the Attempt is manifested; and it cannot be inferred
19 from the commission of another crime.

20   Another essential element of the crime of attempt
21 is the requirement of a direct but ineffectual act done
22 toward the commission of the act alleged. The act
23 must be overt and unequivocal; it must constitute the
24 beginning of the consummation of the Attempted crime.
25 Preparation alone is not sufficient.

26  / / / /

29

## Continuation Of "Claim 4", Page #7

1  Just as there is no evidence to support the elements
2  of Greg's conspiracy to commit murder conviction of
3  Robin Williams, there is no evidence to support the
4  elements of his attempted murder conviction of her.
5  There is no evidence to support a finding that Greg
6  had a specific intent to kill Williams. There is
7  no evidence that Greg attempted a direct but
8  ineffectual act of killing Williams. There is no evidence
9  that Greg participated in the shooting of Williams,
10 directly or indirectly. There is no evidence that Greg
11 aided and abetted an attempt to kill Williams. There is
12 no weapon or physical evidence linking Greg to the shooting
13 of Williams. There is no evidence that Greg even
14 suspected that Fain, Diggs or anyone else had any
15 criminal intent towards Williams, and certainly no
16 evidence that he shared in any criminal intent toward her.
17 Furthermore, just as the note cannot support the
18 conspiracy conviction, it cannot support the attempted
19 murder conviction. Greg's presence when Fain
20 delivered the note cannot be interpreted as providing
21 encouragement to Fain, Diggs, or anyone else to shoot
22 Williams three weeks later; and the reconciliation
23 between Williams and Greg are irreconcilable with a
24 finding that Greg advised or encouraged the attempted
25 murder of Williams. Williams and Fain reconciled also.
26 (RT. 546-556.)  Even putting aside the reconciliation

## Continuation Of "Claim 4"; Page #8

1  of Williams with Fain and Greg, the Attempted murder of
2  Williams was not a reasonably forseeable consequence of
3  Greg's standing on a porch while Fain delivered a note and
4  photograph to Williams.

5     Nonetheless, motive cannot supply the specific intent
6  Elements of Attempted murder. Nor can association establish
7  Either the requisite encouragement or intent to kill.
8  Nor can Greg's brief presence at 126 Blythdale on the day
9  of the shooting establish either the requisite encouragement
10 or intent to kill, particularly, in light of the evidence
11 that he either frequent or lived there.

12    A microscopic examination of the trial transcript
13 fails to reveal ANY evidence from which a reasonable
14 person could make a rational inference establishing any
15 of the elements of conspiracy to commit murder and
16 Attempted murder.

17    Greg's convictions for conspiracy to commit murder
18 and Attempted murder based on absent and/or less than
19 proof beyond a reasonable doubt of every element of
20 the accused crimes violated his right to a fair trial
21 and due process under the Fifth and Fourteenth
22 Amendments of the United States Constitution.

23    Based on the above, the court must grant habeas
24 relief to Greg and enter a judgment of Acquittal.
25 Acquittal is required because, at the close of the
26 prosecution's case-in-chief, the trial court improperly

Continuation Of "Claim 4"; Page #9

1  denied Greg's California Penal Code sec. 1118.1 motion for
2  judgment of Acquittal. (CT 48, 55; RT 1031-1037.)
3  Reversal Alone is not an Adequate Remedy because A retrial
4  could then result, which would violate the State And
5  federal constitutional prohibitions Against double jeopardy.
6  Greg Also Asks the Court to hold an evidentiary
7  hearing so that he can produce the evidence in
8  which he contends.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Claim Five

GREG's right to a fair trial and impartial jury, as guaranteed under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, was violated when a juror gave false answers and misleading statements during voir dire. Supporting cases, but not limited to : _Irwin V. Dowd_, 366 U.S. 717 (1961); _Brecht V. Abrahamson_, 509 U.S. 619 (1993); _Donnelly V. DeChristoforo_, 416 U.S. 637 (1974); _In re Winship_, 397 U.S. 358 (1970); _Carter V. Kentucky_, 450 U.S. 288.

Juror John Elwood committed serious misconduct when he intentionally gave false answers and misleading statements during voir dire.

During voir dire, Mr. Fuetsch, defense counsel for co-defendant Wanda Fain, asked the jury : "Does anyone have a problem or would they have a problem with following the instructions of the Court even if the result that would be reached by following instructions of the Court were contrary to your gut reaction in a case as serious as the one that's charged here?" (RT 132, line 3-8.) The only juror who indicated he would have a problem with following the Court instructions is juror John Elwood. (RT 132-133 (from line 3 of 132 to line 13 of 133); 142-143 (from line 11 of 142 to line 28 of 143); 158-159, line 28-13.)

During voir dire, Mr. Zilversmit, co-defendant Joseph Diggs counsel, asked juror Mr. Castillo, Ms. Owens, Ms. Smith, and

33

Continuation Of "Claim 5"; Page #2

1 Mr. Bowen if they heard the judge's instruction on the
2 presumption of innocence and whether they would be able to
3 vote not guilty assuming there was no evidence to the
4 contrary; each juror indicated they would. (RT 136-137.)
5 Mr. Zihersmit also asked the jury if they would be able
6 to vote not guilty if the prosecution failed to produce
7 evidence of the defendants' guilt beyond a reasonable doubt;
8 none of the jurors indicated to the contrary. (RT 140-141.)
9    During voir dire, Mr. Arian, Greg's trial defense
10 counsel, asked the jury if any of them are confused about
11 the "difference between P. mere suspicion, a creating of a
12 suspicion and creating evidence that convinces beyond
13 a reasonable doubt"; none of the jurors indicated
14 confusion. (RT 147.)
15    As demonstrated in the concerning declarations of juror
16 John Elwood, juror Karen Pemberton, and Maggie Richard,
17 Greg's trial defense investigator, the jury failed to answer
18 questions honestly during voir dire regarding whether or
19 not they would follow the court's instructions.
20
21 _____
22    1 Following the verdicts, all the defendants, including
23 Greg, filed motions for new trial, alleging among other
24 things, jury misconduct during deliberation. However,
25 this ground, as well as all other grounds set forth in these
26 papers, was not raised in the motions for new trial by
defense counsels nor on direct appeal.

Continuation Of "Claim 5"; Page #3

1  Juror Karen Pemberton, in her declaration given to
2  counsel for co-defendant Joseph Diggs states among other
3  things:

      During deliberations, a juror had a bus
      schedule with them. We looked at the
      schedule and we talked about how long
      the bus ride took, when they (Robin, Linda
      & Joseph) got on the bus, and how long it
      took to get where they were going...

      When we went into the jury after arguments,
      some people were saying "they don't have
      a case." I originally believed they were
      talking about the prosecution. But later,
      I realized that more than half of the
      jurors were talking about how the defense
      had not proven their case.

14  (CT 453-454.)  The clear import of this discussion
15  between jurors is that they did not apply the court's
16  instruction on the burden of proof in a criminal case.
17  (CALJIC Nos. 2.61, 2.90, 2.91; CT 334, 340-341; RT 1219,
18  1222-1223. Also, see, RT 93-94.)  Juror Karen P. also
19  advised Maggie Richards, Gee's investigator, that "a
20  couple" of jurors commented on Gee's failure to testify
21  in his own defense being an indication of his guilt. (See
22  Maggie Richards' sworn declaration at, CT 473-474.)
23      The instructions placing the burden of proof in the
24  prosecution are grounded in the Due Process Clause of the
25  Fourteenth Amendment of the United States Constitution
26  and play a vital role in the American scheme of criminal

<u>Continuation Of "Claim 5"; Page #4</u>

1    procedure.  The jurors clearly disobeyed the court's
2    instructions regarding burden of proof when, according to
3    the declaration of juror Karen P. more than half the
4    jurors said, during deliberations, that the defense had
5    not proven their case.  There is nothing in the record
6    to suggest that the credibility of Karen P.'s declaration
7    on this issue was questioned, and it certainly was not
8    countered.  There is no case law or other authority that
9    Greg is aware of that states that the declaration of a
10   single juror cannot establish misconduct, that offending
11   jurors must be identified by name, or that all twelve
12   jurors must disobey court instructions in order to
13   establish misconduct.  Indeed, one juror is enough.
14       The instruction that no inference is to be drawn
15   from a defendant's failure to testify is grounded in
16   the Fifth and Fourteenth Amendments of the United States
17   Constitution.  The jury was instructed as follows:
18   "A defendant in a criminal trial has a constitutional
19   right not to testify.  You must not draw any
20   inference from the fact that a defendant does not
21   testify.  Further, you must neither discuss this matter
22   nor permit it to enter into your deliberation in any
23   way." (CALJIC 2.60; CT 333; RT 1219.)  The jurors'
24   misconduct in disobeying this instruction was inherently
25   and substantially likely to have influenced and biased the
26   ////

36
AO 72
(Rev. 8/82)

<u>Continuation Of "Claim 5"; Page #5</u>

1    involved jurors so as to prejudice Greg.

2       There are hardly two matters more basic to a fair

3    jury trial than the principles embodied in the

4    instructions referred to above.

5       Juror John Elwood, in his declaration given to

6    counsel for co-defendant Joseph Diggs states under oath

7    Among other things:

8        During our deliberations we prepared a time
9        line . . . for the evening of the incident. We
         were particularly concerned with the period
10       between 7:30 pm and 8:35 pm on the night
         of the shooting. To help reconstruct what
11       happened during that period, we consulted
12       bus schedules that jurors Alvin Bernstein and
         Monnell Beurmann brought in on the second
13       day of deliberations. These schedules provided
14       us information about the intervals between
         buses and the frequency with which buses
15       came; this information along with court
16       testimony and statements helped us to fill
17       in our time line from 7:30 pm until 8:35 pm
         on the night of the shooting . . .
18

19       There was also discussion about access to guns
20       which was in reference to defendant Greg
21       Brown's prior arrest.

22       There were also discussions about defendant
23       Greg Brown being a drug dealer and his
24       propensity for violence and drugs and that
         kind of lifestyle. This was mostly in
25       reference to defendant Brown's state of mind.

26

<u>Continuation Of "Claim 5"; Page #6</u>

1   Some jurors also discussed that as a drug
2   dealer, Brown's state of mind may be twisted
3   and power hungry. Some jurors also discussed
    that as a drug dealer, Brown might feel that
4   there would be no consequences to his actions
5   if he killed Robin Williams. The jurors who
    brought up discussions of def. Brown's
6   lifestyle were reminded by other jurors that
7   this line of discussion was speculation and
    could not be considered in deliberations.
8
9   Someone also made reference to the fact that
    if you do crack cocaine, it does not mean
10  you lose your memory.
11
12  (CT 451-452.) This statement taken on its face is clearly
13  juror bias of the worst sort in and of itself. Nevertheless;
14  juror Jordan Owens corroborated the fact that jury did in fact
15  disregarded and disobeyed the court's instructions and
16  considered the seizure of a gun and drugs from defendant
17  Gregory Brown as evidence of his guilt in the charged crimes.
18  (Declaration of Maggie Richards at, CT 473-474)
19       Early in the prosecution case, the trial court gave
20  the following limiting instruction to the jury regarding the
21  evidence seized during the January 6, 1995 arrest of Greg.
22  The court admonished:

23       [T]he evidence or testimony that's being received
24       at this point regarding the gun and cocaine
         seized at 416 Blythedale on January 26th [sic]
25       1995, in the presence of Mr. Brown is being
         offered only to show motive for Mr. Brown to

AO 72
(Rev. 8/82)

<u>Continuation Of "Claim 5"; Page #7</u>

harm Ms. Williams. You may not consider this
evidence for ANY other purpose at this time.

(RT 347-348.) After the completion of the presentation of all
of the evidence, the court gave the jury the following
instructions:

Evidence was introduced of an arrest on
January 6, 1995 of defendant Gregory Brown
and seizure of guns and drugs from the premises
of 126 Blythdale. This evidence was admitted and
may be considered by you only for the purpose of
showing a possible motive for the commission of the
crimes charged. You've to consider this evidence
only for the purpose of determining whether such
motive exists and for no other purpose. Such
evidence, if believed, was not received and may
not be considered by you to prove that defendant
Gregory Brown is a person of bad character or
that he has a disposition to commit crimes. Such
evidence was received and may considered by you
only for the limited purpose of determining if
it tends to show a motive for the commission
of the crimes charged. For the limited purpose
for which you may consider such evidence, you
must weigh it in the same manner you do all
other evidence in this case. You're not permitted
to consider such evidence for any other purpose.

Evidence that a gun was seized on January 6th,
1995, may not be considered by you to infer or
prove that any of the defendants had a gun on
February 7th, 1995, when Robin Williams was shot.

Certain evidence was admitted for a limited purpose.
At the time this testimony was admitted you were
admonished it could not be considered by you for
for any purpose other than the limited purpose for
which it was admitted. Do not consider such evidence
for any purpose, except the limited purpose for
which it was admitted.

AO 72
(Rev. 8/82)

39

<u>Continuation Of "Claim 5"; Page #8</u>

1  (RT 1213-1215.)  These instructions were also provided to the
2  jury in written form during their deliberations. (CT 306,
3  318-320, 323.)

4        Jurors clearly disregarded and disobeyed these
5  instructions. Far from limiting their consideration of the
6  evidence of the gun and cocaine to the issue whether Geeta had
7  a motive to harm Williams; jurors discussed that the
8  January 6, 1995 gun and cocaine evidence showed that Geeta
9  had "access to guns," was "a drug dealer," had a
10 "propensity for violence and drugs," had a "twisted and
11 power hungry state of mind," and felt that "there would
12 be no consequences to his actions if he killed Robin
13 Williams." The fact that some jurors reminded other
14 jurors not to consider this line of discussion does not
15 indicate whether any or all of the improper discussion
16 ceased, and there is no indication that the reminder was
17 given by the jury foreman or otherwise carried special
18 authority. And the reminder could not erase the previous
19 improper discussion. The record is without any
20 contradictory declarations on this issue. Nor is there
21 any indication in the record that the prosecutor or the
22 trial court questioned the credibility of juror John
23 Elwood's declaration on this subject.

24  / / / /
25  / / / /
26  / / / /

Continuation Of "Claim 5"; Page #9

1    The declaration of Greg's trial defense investigator,
2  Maggie Richards, states, among other things:

3       On May 30, 1995, I spoke with juror Karen
4    Pemberton by telephone. At that time, she
5    told me she heard "a couple" jurors discussing
     the fact that defendant Gregory Brown did Not
6    testify in his own defense, and that this was
     an indication of guilt.
7

8       On May 30, 1995, I spoke with juror Alvin Bernstein
     by telephone. He told me that in jury deliberations
9    . . . jurors did consult maps and bus schedules.

10
       On May 30, 1995, I spoke with juror Jordan T.
11   Owens by telephone. She told me that the jury
     Considered as evidence of one of defendant's family
12   Shot the victim that there were guns in Gregory
13   Brown's past, and that he was a drug dealer.
14  (CT 473-474.)

15      The sworn declarations of jurors John Elwood and
16  Karen Pemberton and that of investigator Maggie Richards,
17  demonstrate that the jurors consulted bus schedules and/or
18  maps during deliberations. The record shows that neither
19  were admitted into evidence at trial. It is juror misconduct
20  to consider and discuss "evidence" other than that which
21  was received at trial, whether a juror acted intentionally
22  or inadvertently in being exposed to the outside source
23  of information.
24      The jurors were also specifically instructed:

25      You must decide all questions of fact in this
        case from the evidence received in this trial
26      and not from any other source . . .

Continuation Of "Claim 5"; Page #10

1    You must not make any independent
2    investigation of the facts ... nor consider
3    nor discuss facts as to which there's no
evidence.

4  (CALJIC 1.03; CT 313; RT 1210.) Clearly, the jurors use
5  of the bus schedules constituted misconduct.

6    Timing was an important issue in this case. The
7  prosecution theory was that Fain, Diggs and Williams left
8  126 Blythdale at around 7:30 p.m., walked to the bus stop,
9  waited for the bus, rode the bus for twenty to twenty-five
10  minutes, and walked a block and a half, before co-defendants
11  Fain and Diggs shot Williams. The wounded Williams was first
12  discovered around 8:30 p.m. There is no evidence that Fain or
13  Diggs were anywhere in sight at that time. Given all of this,
14  plus the co-defendants denial of any involvement in Williams'
15  shooting, the expert witness evidence regarding Williams' memory
16  problems, and the defense theories that third parties were
17  responsible; the jury plainly had a question as to whether
18  all that Williams described could have happened within
19  the one hour time period. Thus, they obviously felt a need
20  to fill in important gaps in the prosecution case time line,
21  and used the bus schedules to do so. Inasmuch as Greg's
22  culpability as a conspirator rested on the jury's
23  evaluations of the actions of Fain's and Diggs and on the
24  credibility and reliability of Williams' testimony, the
25  jury's consultation of the bus schedules to bolster the
26  prosecution's case was prejudicial to Greg.

<u>Continuation Of "Claim 5"; Page #11</u>

1    The sworn declaration of juror John Elwood makes clear
2   that a juror injected his own outside expertise into deliberations.
3   The comment of a juror that if you do crack cocaine it does not
4   mean you lose your memory is also misconduct. The relationship
5   between crack cocaine use and memory loss is not a subject of
6   commonplace knowledge. Moreover, the juror comment is not
7   a reasonable interpretation of expert witness psychiatrist
8   Eugene Schoenfeld trial testimony. (RT 932-935.) The juror
9   who made the comment regarding cocaine and memory was,
10  clearly relying on first hand experience, observation, or study.
11  As such, his comment injected his outside expertise into the
12  deliberations, which constituted misconduct.
13    Here, the evidence is so very slim against Greg, non-
14  existent by most standards, that a very minimal amount of
15  error can have a substantial weight in affecting the verdict.
16  All that ties Greg to the shooting of Robin Williams is, the
17  January 6 arrest, and his connection to the delivery of a
18  purportedly threatening note. Other than his presence earlier
19  in the day, there is <u>nothing</u> connecting Greg to the events
20  leading up to Williams' shooting. Absent the varieties of jury
21  misconduct in this case, no trier of facts could have
22  found Greg guilty of the crimes charged.
23    As stated herein, the defense counsels explicitly asked
24  the jury material questions during voir dire which the
25  jury intentionally failed to respond honestly to; specifically,
26  the jury concealed their unwillingness to (1) follow the court's

## Continuation Of "Claim 5; Page #12

1   instructions; (2) give the defendants, particularly GREG,
2   the presumption of innocence; (3) vote Not guilty if the
3   prosecution failed to produce evidence of the defendants'
4   guilty beyond A REASONABLE doubt; And (4) ASCERTAIN
5   the "difference between A mere suspicion, A creating
6   of A suspicion And creating evidence that convinces
7   beyond A REASONABLE doubt." (RT 132; 136-137; 140-
8   141; 147.)
9       The juror's failure to respond honestly to the defense
10  counsels' questions during voir dire violated GREG's Right
11  to A fAir triAl, AN impartial jurey, due process,
12  confrontation, And A verdict based on Admissible trial
13  evidence under the Fifth, Sixth, And Fourteenth
14  Amendments of the United States Constitution.
15      Based on the Above, the Court must grant GREG
16  hAbeAs Relief on this ground Along with Any other
17  Relief the Court deems fAir And just. GREG Also Asks
18  the Court to hold AN evidentiary heARing so that he
19  can produce the evidence in which he contends.
20
21
22
23
24
25
26
27
28

44

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3  of these cases:

4    *SEE PAGES: 6, 14, 22, 24 AND 33 for the NAME AND*

5    *citation of the CASES which support EACH CLAIM HEREIN.*

6    _____

7  Do you have an attorney for this petition?                    Yes_____    No __X__

8  If you do, give the name and address of your attorney:

9    _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12        July 8, 2008

13  Executed on ~~April 15, 2008~~                    Gregory L. Brown

14            Date                                Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28                        45

# ATTACHMENT 1

1

2

3

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

4

Department No. 22

5

6

7

8

9

10

IN THE MATTER OF THE APPLICATION )
OF                               )
                                 )
                                 )    WRIT NO. 5568
                                 )
GREGORY L. BROWN                 )    ORDER        **ENDORSED**
                                 )                 **F I L E D**
     Petitioner,                 )          *San Francisco County Superior Court*
                                 )
FOR A WRIT OF HABEAS CORPUS      )             MAY 3 0 2007
                                 )
_____ )          **GORDON PARK-LI, Clerk**
                                           BY: ____ **CARLOS BARRAZA**
                                                        Deputy Clerk

11

12

13

14

15

    On April 25, 2007 this Court received a Petition for Writ of
Habeas Corpus from petitioner Gregory L. Brown ("Petitioner").   On
May 25, 1995, Petitioner was convicted of conspiring to commit
murder and of attempted murder.  On January 28, 1998, the First
District Court of Appeal affirmed the judgment with sentencing
modifications.  On April 29, 1998, the California Supreme Court
denied review.  Petitioner is serving 56 years to life at Corcoran
State Prison.

16

17

18

19

    Petitioner seeks habeas relief on four grounds.  He claims
that the verdict was not supported by sufficient evidence and that
the prosecutor "maliciously and intentionally introduced false and
unsupported and deceitful material statements at trial." He also
claims that jurors committed misconduct and that his trial and
appellate counsel provided ineffective assistance of counsel.

20

21

22

23

24

25

    Petitioner was convicted almost 12 years ago and the Court of
Appeal affirmed his conviction over nine years ago.  Under well-
established California law, a petition should be filed as promptly
as the circumstances allow.  As a result, the petitioner must
explain in detail and "justify any substantial delay in presenting
a claim." (*In re Clark* (1993) 5 Cal.4th 750, 765); *In re Swain*
(1949) 34 Cal.2d 300, 302.)  Where there has been significant delay
in seeking habeas relief, the petitioner must describe
circumstances sufficient to justify or explain the delay.  To avoid
the bar of untimeliness, the petitioner has the burden of
establishing: (1) the absence of substantial delay; (2) good cause

1

1  for the delay; or (3) that the claim falls within an exception to
   the bar of untimeliness. (*In re Robbins* (1998) 18 Cal.4th 770,
2  781; *see also Clark, supra*, 5 Cal.4th at 775 ["[i]f a petitioner
   had reason to suspect that a basis for habeas corpus relief was
3  available, but did nothing to promptly confirm those suspicions,
   that failure must be justified"].)
4

5      As an initial matter, Petitioner's insufficient evidence
   and juror misconduct claims are barred because they were raised
6  - and rejected - on appeal.  Because these issues were
   "previously raised and rejected on direct appeal, and because
7  the [P]etitioner does not allege sufficient justification for
   the issues['] renewal on habeas corpus," the issues are
8  "procedurally barred from being raised again."  (*Harris, supra*,
   5 Cal.4th at 825; *see also In re Sakarias* (2005) 35 Cal.4th 140,
9  145.)

10      Petitioner's ineffective assistance of trial and appellate
   counsel claims fail for two reasons.  First, he has failed to
11  justify the delay in bringing these claims.  Instead of alleging
   facts to demonstrate good cause for the delay, Petitioner claims
12  that he "lacked basic education and all legal knowledge, until now"
   and that he was somehow prevented from seeking relief because he
13  has "been suffering from major depression and mental illness."
   These contentions have no merit.  Petitioner does not allege when
14  he began suffering "major depression and mental illness," nor does
   he allege how these conditions prevented him from seeking writ
15  relief.  Moreover, Petitioner does not explain how his alleged lack
   of "legal knowledge" prevented him from consulting his appellate
16  attorney about a possible claim for ineffective assistance of trial
   counsel, or from contacting an attorney to inquire into the quality
17  of representation provided by his appellate counsel.
18

19      Even assuming Petitioner's ineffective assistance of
   counsel claims are not time-barred, these claims fail because
20  Petitioner has not provided any documentation to support his
   claims that his trial and appellate counsel provided ineffective
21  assistance.  It is well settled that a petition for writ of
   habeas corpus should:  (1) state fully and with particularity
22  the facts upon which relief is sought; and (2) include copies of
   reasonably available documentary evidence supporting the claim,
23  including pertinent portions of trial transcripts and affidavits
   or declarations.  (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)
24  Conclusory allegations made without any explanation of their
   basis do not warrant relief.  (*People v. Karis* (1988) 46 Cal.3d
25  612, 656; *see also In re Swain* (1949) 34 Cal.2d 300, 303-304.)

1  Petitioner's failure to attach any supporting documentation to
his petition prevents this Court from conducting a meaningful
2  review of his ineffective assistance of counsel claims.

3      "To establish ineffective assistance of counsel . . . a
defendant must show that counsel's representation fell below an
4  objective standard of reasonableness under prevailing
professional norms, and that counsel's deficient performance was
5  prejudicial, i.e., that a reasonable probability exists that,
but for counsel's failings, the result would have been more
6  favorable to the defendant." (*Strickland v. Washington* (1984)
466 U.S. 668, 687-688; *People v. Waidla* (2000) 22 Cal.4th 690,
7  718.)  Even assuming Petitioner's claims about his attorneys'
conduct at trial and during his appeal are accurate, his claims
8  fail because he has not demonstrated that his counsels'
performance "fell below an objective standard of reasonableness"
9  and that there is a reasonable probability that, but for
counsel's alleged errors, "the result of the proceeding would
10  have been different." (*People v. Ledesma* (1987) 43 Cal.3d 171,
218.)  "When a defendant challenges a conviction, the question
11  is whether there is a reasonable probability that, absent the
errors, the factfinder would have had a reasonable doubt
12  respecting guilt." (*Ledesma, supra*, 43 Cal.3d at 218, citing
*Strickland, supra,* 466 U.S. at 693-94].)
13

14      For the foregoing reasons, Petitioner's writ of habeas corpus
15  is DENIED.

16  5/25/07
_____
17  Date                              Judge of the Superior Court

18

19

20

21

22

23

24

25

3

# ATTACHMENT 2

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

FILED

JUL - 5 2007

Court of Appeal - First App. Dist.
DIANA HERBERT
by_____
DEPUTY

In re GREGORY L. BROWN,

on Habeas Corpus.

A118248

(San Francisco County
Super. Ct. No. 5568)

BY THE COURT:

The petition for writ of habeas corpus is denied. Petitioner has not demonstrated good cause for a delay of over 9 years in seeking habeas relief, nor has he shown his petition should be considered under one of the exceptions to the requirement that habeas relief be timely sought. (See *In re Robbins* (1998) 18 Cal.4th 770, 780-781.) Further, some of the claims asserted in the petition are barred because they were raised and rejected on appeal. (*In re Waltreus* (1965) 62 Cal.2d 218, 225.)

(Ruvolo, P.J., and Rivera, J., joined in the decision.)

JUL - 5 2007

RUVOLO, P.J.

Date: _____    _____ P.J.

# ATTACHMENT 3

S155258

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re GREGORY L. BROWN on Habeas Corpus

The petition for writ of habeas corpus is denied. (See *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Swain* (1949) 34 Cal.2d 300, 304; *People v. Duvall* (1995) 9 Cal.4th 464, 474; *In re Waltreus* (1965) 62 Cal.2d 218; *In re Lindley* (1947) 29 Cal.2d 709; *In re Dixon* (1953) 41 Cal.2d 756.)

George, C. J., was absent and did not participate.

SUPREME COURT
**FILED**

JAN **3 0** 2008

Frederick K. Ohlrich Clerk

_____

Deputy

**BAXTER**
_____
Acting Chief Justice

# EXHIBIT     A

FILED

San Francisco County Superior Coun

MAR 1 7 1995

ALAN CARLSON, Clerk

BY: _____

Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | NO. 159271 |
| Plaintiff, | |
| vs. | F. ANDREWS |
| GREGORY BROWN, WANDA FAIN and JOSEPH DIGGS, | INFORMATION |
| Defendants | |

COUNT I:

GREGORY BROWN, WANDA FAIN and JOSEPH DIGGS

are accused by the District Attorney of the City and County of San
Francisco, State of California, by this Information, of the crime of
felony, to wit: VIOLATION OF SECTION 182.1 OF THE CALIFORNIA PENAL
CODE committed as follows: The said defendants on or about the 7th
day of January, 1995 to the 7th day of February, 1995, both dates
inclusive, at the City and County of San Francisco, State of
California, did wilfully and unlawfully conspire together and with
another person and persons whose identity is unknown to commit the
crime of MURDER, in violation of Section 187 of the Penal Code, a
felony; that pursuant to and for the purpose of carrying out the
objects and purposes of the aforesaid conspiracy, the said defendants
committed the following overt act and acts at and in the County of San
Francisco:

OVERT ACTS

OVERT ACT NUMBER 1

It is alleged in the City and County of San Francisco, on or about the
7th day of January, 1995 to February 7, 1995, defendant Wanda Fain did
write a note containing threats against Robin Williams.

002

People v. Gregory Brown, et al.                    SC 159271

Page 2


OVERT ACT NUMBER 2

It is alleged in the City and County of San Francisco, on or about the
7th day of January, 1995 to February 7, 1995, defendant Wanda Fain did
put the note in an envelope with a photograph of Robin Williams which
was taken by defendant Gregory Brown and which was given to Fain by
defendant Gregory Brown.


OVERT ACT NUMBER 3

It is alleged in the City and County of San Francisco, on or about the
7th day of January, 1995 to February 7, 1995, defendant Wanda Fain did
deliver the threatening note and photograph to Robin Williams.


OVERT ACT NUMBER 4

It is alleged in the City and County of San Francisco, on or about the
7th day of January, 1995 to February 7, 1995, defendant Gregory Brown
did accompany defendant Wanda Fain to deliver the threatening note to
Robin Williams.


OVERT ACT NUMBER 5

It is alleged in the City and County of San Francisco, on or about the
7th day of January, 1995 to February 7, 1995, defendant Gregory Brown
did encourage defendants Wanda Fain and Joseph Diggs to murder Robin
Williams.


OVERT ACT NUMBER 6

It is alleged in the City and County of San Francisco, on or about the
7th day of February, 1995, that defendants Gregory Brown, Wanda Fain
and Joseph Diggs did reside at the same address of 126 Blythdale
Street in San Francisco.


OVERT ACT NUMBER 7

It is alleged in the City and County of San Francisco, on or about the
7th day of February, 1995, that defendant Wanda Fain did provide
cocaine base, also called "crack" cocaine, to Robin Williams.

G03

People v. Gregory Brown, et al.                    SC 159271

Page 3


OVERT ACT NUMBER 8

It is alleged in the City and County of San Francisco, on or about the
7th day of February, 1995, that defendant Wanda Fain did encourage
Robin Williams to go to Jerrold Street with defendants Wanda Fain and
Joseph Diggs.


OVERT ACT NUMBER 9

It is alleged in the City and County of San Francisco, on or about the
7th day of February, 1995, that defendants Wanda Fain and Joseph Diggs
did get on the Number 15 bus with Robin Williams.


OVERT ACT NUMBER 10

It is alleged in the City and County of San Francisco, on or about the
7th day of February, 1995, that defendants Wanda Fain and Joseph Diggs
did exit the bus with Robin Williams at 3rd and McKinnon Streets in
San Francisco.


OVERT ACT NUMBER 11

It is alleged in the City and County of San Francisco, on or about the
7th day of February, 1995, that defendants Wanda Fain and Joseph Diggs
did take Robin Williams with them to Jerrold Street with the intention
of murdering Robin Williams.


OVERT ACT NUMBER 12

It is alleged in the City and County of San Francisco, on or about the
7th day of February, 1995, that defendants Wanda Fain and Joseph Diggs
did walk on Jerrold Street approaching Quint Street with Robin
Williams.


OVERT ACT NUMBER 13

It is alleged in the City and County of San Francisco, on or about the
7th day of February, 1995, that while walking with Robin Williams
defendants Wanda Fain and Joseph Diggs did shoot Robin Williams in the
back of the head with a 9mm semi-automatic pistol.

G 0 4

People v. Gregory Brown, et al.                          SC 159271

Page 4


OVERT ACT NUMBER 14

It is alleged in the City and County of San Francisco, on or about the
7th day of February, 1995, that defendants Wanda Fain and Joseph Diggs
did shoot at Robin Williams again while she was lying on the ground.


USE OF FIREARM ALLEGATION PURSUANT TO PENAL CODE SECTION 12022.5(a)
[As to defendant JOSEPH DIGGS only]:

It is further alleged that in the commission and attempted commission
of the above offense, the said defendant, JOSEPH DIGGS, personally
used a firearm, to wit, a 9 mm semi-automatic pistol, within the
meaning of Penal Code Section 12022.5(a) and also causing the above
offense to be a serious felony within the meaning of Penal Code
Section 1192.7(c)(8).


ARMED WITH A FIREARM ALLEGATION PURSUANT TO PENAL CODE SECTION
12022(a)(1)[As to defendants GREGORY BROWN and WANDA FAIN only]:

It is further alleged that in the commission and attempted commission
of the above offense a principal in said offense was armed with a
firearm, to wit, a 9 mm semi-automatic pistol, said arming not being
an element of the above offense, within the meaning of Penal Code
Section 12022(a)(1).

ALLEGATION OF FELONY COMMITTED WHILE ON BAIL AND ON OWN RECOGNIZANCE
PURSUANT TO PENAL CODE SECTION 12022.1[As to defendant GREGORY BROWN
only]:

It is further alleged that the defendant, GREGORY BROWN, committed the
above offense while he was released from custody in a felony offense,
on bail and on his own recognizance, within the meaning of Penal Code
Section 12022.1.

COUNT II:

The said defendants GREGORY BROWN, WANDA FAIN AND JOSEPH DIGGS, are
further accused by the District Attorney of the City and County of San
Francisco, State of California, by this Information, of the crime of
felony, to wit:  VIOLATION OF SECTION 664/187 OF THE CALIFORNIA PENAL
CODE committed as follows:  The said defendant on or about the 7th day
of February, 1995, at the City and County of San Francisco, State of
California, did wilfully, unlawfully, and with malice aforethought
attempt to murder ROBIN WILLIAMS, a human being.

| SUPERIOR C( T IN THE CITY AND COUNTY OF SAN F( ICISCO - MINUTES | | | | 009 |
|---|---|---|---|---|

People of the State of California vs.     GREGORY L. BROWN     ☒ Present

| SC # | Assistant DA of Record | | Attorney of Record | |
|---|---|---|---|---|
| 159271-01 | . | ☐ Present | S. ARIAN | ☒ Present |
| | Clerk | | Judge | |
| | JOSIE C. ROQUE | | DAVID A. GARCIA | |

Reporter

JOSEPH H. VICKSTEIN#4780, 850 BRYANT STREET, ROOM 306 - SAN FRANCISCO, CA 94103

Cause on Calendar for Arraignment
Special appearance by G. KOELLING, DA for the Assistant DA of Record.
Defendant has retained ARIAN/S, Esq.

| Count | Code | Section | Degree | MC # | Plea |
|---|---|---|---|---|---|
| 1 | PC | 182.1/F | | 01563370 | NG |
| 2 | PC | 664.187/F | | 01563370 | NG |

Defendant waives formal reading of the Information.

Defendant is duly arraigned. Not guilty plea(s) as to each count
and denial of any and all allegation(s), entered.

The defendant declares his/her true name to be that stated in the accusatory pleading.

Cause is ordered continued to 04/24/95 at 09:30 a.m. in Department S22 for Trial.

| SUPERIOR CO̶    T IN THE CITY AND COUNTY OF SAN F̶    ICISCO - MINUTES | | | | 0̶1̶0̶ |
|---|---|---|---|---|
| People of the State of California vs.    WANDA LOUISE    FAIN | | | | ☒ Present |
| SC # | Assistant DA of Record | | Attorney of Record | |
| 159271-02 | .                                          ☐ Present | | F. FUETSCH | ☒ Present |
| | Clerk | | Judge | |
| | JOSIE C. ROQUE | | DAVID A. GARCIA | |

Reporter

JOSEPH H. VICKSTEIN #4780, 850 BRYANT STREET, ROOM 306 - SAN FRANCISCO, CA 94103

Cause on Calendar for Arraignment
Special appearance by G. KOELLING, DA for the Assistant DA of Record.
Court has appointed FUETSCH/F, Public Defender.

| Count | Code | Section | Degree | MC # | Plea |
|-------|------|-----------|--------|------------|------|
| 2 | PC | 664.187/F | 1 | 01559424 | NG |
| 3 | PC | 245(A).2/F | | 01559424 | NG |
| 1 | PC | 182.1/F | | 01559424 | NG |

Defendant waives formal reading of the Information.

Defendant is duly arraigned. Not guilty plea(s) as to each count
and denial of any and all allegation(s), entered.

The defendant declares his/her true name to be that stated in the accusatory pleading.

Cause is ordered continued to 04/24/95 at 09:30 a.m. in Department S22 for Trial.

Attest:   JOSIE C. ROQUE        Deputy Clerk

| SUPERIOR COURT IN THE CITY AND COUNTY OF SAN FRANCISCO - MINUTES | | | 011 |
|---|---|---|---|

People of the State of California vs.  JOSEPH  DIGGS                 ☒ Present

| SC # | Assistant DA of Record | | Attorney of Record | |
|---|---|---|---|---|
| 159271-03 | F. ANDREWS | ☐ Present | MARC SILVERSMIT | ☒ Present |
| | Clerk | | Judge | |
| | JOSIE C. ROQUE | | DAVID A. GARCIA | |

Reporter

JOSEPH H. VICKSTEIN #4780, 850 BRYANT STREET, ROOM 306 - SAN FRANCISCO, CA 94103

Cause on Calendar for Arraignment
Special appearance by G. KOELLING, DA for the Assistant DA of Record.
Court has appointed SILVERSMIT/MARC, conflict counsel.

| Count | Code | Section | Degree | MC # | Plea |
|---|---|---|---|---|---|
| 2 | PC | 664.187/F | 1 | 01559442 | NG |
| 3 | PC | 245(A).2/F | | 01559442 | NG |
| 4 | PC | 12021A1/F | | 01559442 | NG |
| 1 | PC | 182.1/F | | 01559442 | NG |

Defendant waives formal reading of the Information.

Defendant is duly arraigned. Not guilty plea(s) as to each count
and denial of any and all allegation(s), entered.

The defendant declares his/her true name to be that stated in the accusatory pleading.

Cause is ordered continued to 04/24/95 at 09:30 a.m. in Department S22 for Trial.

070

F I L E D

San Francisco County Superior Court

MAR 2 4 1995

ALAN CARLSON, Clerk
BY: _____
Deputy Clerk

STEPHEN ARIAN, Attorney at Law
State Bar No. 38939
Pier 33 South, #200
San Francisco, CA 94111
(415) 434-1550

Attorney for Defendant GREGORY L. BROWN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GREGORY L. BROWN, ) <br> WANDA FAIN, and JOSEPH DIGGS, ) <br> ) <br> _____ Defendants. ) | No. 159271- 0/ <br><br> NOTICE OF MOTION FOR <br> DISMISSAL OF COUNTS I <br> AND II OF THE INFORM- <br> ATION UNDER SECTION 995 <br> OF THE PENAL CODE <br><br> Date: April 7, 1995 <br> Time: 9:00 A.M. <br> Dept: 23 |

To the District Attorney of the City and County of San Francisco and to FLOYD ANDREWS, Deputy District Attorney:

PLEASE TAKE NOTICE that on the 7 day of April 1995, at 9:00 A.M. or as soon thereafter as the matter may be heard in Department 23 of the above entitled court, defendant GREGORY L. BROWN, through counsel will move the court for dismissal of Count I and II of the indictment herein as it relates to said defendant GREGORY L. BROWN, and to strike the enhancement allegations as they relate to said GREGORY L. BROWN, all under Section 995 of the California State Penal Code.

This motion is made on the grounds that there is no competent evidence to show probable cause to hold defendant

BROWN 2/995                    1

152

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO

PEOPLE OF THE STATE OF CALIFORNIA VS.          ACTION NO.____159271_____

                                                      F. Andrews_____
                                               ASSISTANT D.A.        PRESENT

____GREGORY L. BROWN_____    -1_____          ____S. Arian_____
DEFENDANT                    PRESENT           DEFENSE COUNSEL        PRESENT

____WANDA LOUISE FAIN_____   -2_____          ____F. Fuetsch  PD_____
DEFENDANT                    PRESENT           DEFENSE COUNSEL        PRESENT

____JOSEPH DIGGS_____    -3_____          ____M. Silversmit_____
DEFENDANT                    PRESENT           DEFENSE COUNSEL        PRESENT

========================================================================

     CAUSE ON CALENDAR __Mo. 995 PC (all); Mo. handwriting exemplar (Diggs)__
Mo. discovery (Diggs); Motion for joinder in motions (Fain, Brown)

9:15 A.M.
The Court grants motion for joinder.
The Court grants the motion for discovery in part.
The Court grants the motion for handwriting exemplar.

9:30 A.M.  The Court orders the matter continued to 1:30 P.M. for
hearing on 995 PC motion.
2:50 P.M.

Hearing resumes.  The Court grants the 995 PC motion as to defendant BROWN
(Great Bodily Injury Allegation only).  The 995 PC motion is denied in all
other respects.

Defendants are given standing to participate in the 1538.5 PC hearing in case
#159194  (Gregory Brown)  Copy of proceedings had in that matter are attached
and incorporated herein by reference.

                    DEPT.__27___DATE April 5, 1995__PAGE_____
          ATTEST:_____DEPUTY CLERK

CRM-04 (8/89)

1  MARC J. ZILVERSMIT, ESQ.
   RIORDAN & ROSENTHAL
2  Attorney At Law
   523 Octavia Street
3  San Francisco, CA 94102
   Telephone: (415) 431-3472
4
   Attorney for Defendant JOSEPH DIGGS
5

6              SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                 FOR THE COUNTY OF SAN FRANCISCO

8
   THE PEOPLE OF THE STATE OF CALIFORNIA    )    No. 159271
9                                           )
                    Plaintiff,              )
10                                          )    DECLARATION OF
                    vs.                     )    JUROR JOHN ELWOOD
11                                          )
   JOSEPH DIGGS,                            )
12                                          )
                    Defendant.              )
13  _____)

14      I, John Elwood, declare under penalty of perjury that:

15      I was a juror in the case of People v. Joseph Diggs, Wanda

16  Fain, and Gregory Brown, No. 159271.

17      During our deliberations we prepared a time line from

18  January 6 to February 10 and made a time line for the evening of

19  the incident.  We were particularly concerned with the period

20  between 7:30 pm and 8:35 pm on the night of the shooting.  To

21  help reconstruct what happened during that period, we consulted

22  bus schedules that Jurors Alvin Bernstein and Monell Beurmann

23  brought in on the second day of deliberations.  These schedules

24  provided us information about the intervals between buses and the

25  frequency with which buses came; this information₎helped us fill ~~Coming along a cert testimony~~ ~~statement~~

26  in our time line from 7:30 pm until 8:35 pm on the night of the shooting

27
   Declaration of John Elwood
28 Page 1

1  We also discussed a number of other things in our       452
2  deliberations.  We discussed the inconsistencies between
3  defendant Wanda Fain's statement and defendant Joseph Diggs'
4  statement.  We discussed how these inconsistencies demonstrated
5  that at least one of them was lying.

6  There was also discussion about access to guns which was in
7  reference to defendant Greg Brown's prior arrest.

8  There were also discussions about defendant Greg Brown being
9  a drug dealer and his propensity for violence and drugs and that
10  kind of lifestyle.  This was mostly in reference to defendant
11  Brown's state of mind.  Some jurors discussed that as a drug
12  dealer, Brown's state of mind may be twisted and power hungry.
13  Some jurors also discussed that as a drug dealer, Brown might
14  feel that there would be no consequences to his actions if he
15  killed Robin Williams. *The jurors who brought up discussions of def. Browns lifestyle were reminded by other jurors that this line of deliberations was speculation & could no*
16  Someone also made reference to the fact that if you do crack *be consi*
17  cocaine, it does not mean you lose your memory. *discussed in deliberation St*

18  Some jurors also discussed defendant Joseph Diggs' medical
19  condition, specifically his tremor.  Juror Jordan Owens stated
20  that this might explain how Diggs could have shot at Robin
21  Williams and missed.

22  Executed this 5 day of JULY, 1995 in San Francisco,
23  California.

24
25                                    JOHN ELWOOD
                                      Declarant
26

27
Declaration of John Elwood
28  Page 2

"A"

1    record that Mr. Brown personally did it?

2        MR. ANDREWS:  I don't believe that with the conspiracy

3    count I have to prove personal great bodily injury.

4        THE COURT:  Well, you read it.  It says:

5            "It is further alleged in the commission of

6        the above offense said defendant, with the

7        intent to inflict such injury, personally

8        inflicted great bodily injury on Robin Williams."

         If you look at page 6 of the Information.

         MR. ANDREWS:  If it's plead that way, it is incorrect.

         The matter is submitted.

         THE COURT:  All right.  Is the matter submitted?

3        MR. ARIAN:  Submitted, your Honor.

4        THE COURT:  All right.  The Court will grant the 995

5    Motion as to the great bodily injury allegation as to Mr.

16   Brown.  The other counts, the 995 motion is denied.

17       Let's go to the motion to suppress now.

18       All right.  We will get started with it now.  All right.

19   Call your first witness.

20       MR. ANDREWS:  Thank you, your Honor.

21       I will call Officer Walsh to the stand.

22       I will ask that Officer Jefferson be designated as my

23   investigating officer.

24       THE COURT:  All right.

25       MR. ARIAN:  Your Honor, may I ask for an order excluding

26   all witnesses?

27       THE COURT:  Yes.  All witnesses will be ordered excluded

28   from the courtroom.  You are not to discuss the testimony

1    instructions as it relates to how you are to conduct

2    yourself.  The process is as important as the product.

3                 Does anyone have a problem or would they

4    have a problem with following the instructions of the

5    Court even if the result that would be reached by

6    following the instructions of the Court were contrary to

7    your gut reaction in a case as serious as the one that's

8    charged here?

9                 PROSPECTIVE JUROR:  I think I would have a

10   problem with it.

11                MR. FUETSCH:  Do you feel as though --

12   well, actually could you explain what you mean by you

13   would have a problem with that?

14                PROSPECTIVE JUROR:  I believe there's a

15   higher authority than legal authority that is like moral

16   authority, and to follow like a set of rules rather than

17   more of a moral thing, I think I would be hardpressed to

18   follow the set of rules that are outlined by law.

19                MR. FUETSCH:  Let me ask you a pointed

20   question.  If, for example, and I'm not saying it's going

21   to happen, if, for example, in the middle of the night

22   the police came to your home and forced their way in and

23   just searched your house and in your home discovered

24   bombs, machine guns, bottom making material, whatever

25   they discovered is illegal.  And the prosecution sought

26   to prosecute you for the crime of possessing that

27   material or that item.  There are laws, of course, that

28   allow you as an individual through your attorney or

133

1    individually to challenge the admissibility of such

2    evidence, and the basis or reason for the law that allows

3    you to challenge such evidence is the law of the

4    constitution.  That is, while we may not condone your

5    conduct in possessing that, we nevertheless must hold the

6    authorities to a very high standard.  In the case I've

7    described, that evidence wouldn't be admissible against

8    you to convict you.

9                    Do you think that's wrong?

10                   PROSPECTIVE JUROR:  No.  In that particular

11   case I don't think that's wrong, but I think if you

12   misconstrue the constitution or broaden its actual

13   authority, then I think that could be potentially wrong.

14                   MR. FUETSCH:  But in the illustration I've

15   given you --

16                   PROSPECTIVE JUROR:  That's fine, I wouldn't

17   have any problem with that.

18                   MR. FUETSCH:  One individual, and I think

19   actually it was you again, indicated that you had been

20   attacked some years ago by someone, correct?

21                   PROSPECTIVE JUROR:  That's correct.

22                   MR. FUETSCH:  And you suffered a concussion

23   as a result of that?

24                   PROSPECTIVE JUROR:  A mild concussion.

25                   MR. FUETSCH:  Has anybody else here

26   suffered a severe injury, say in, for example, an

27   automobile accident or been attacked, anything wherein

28   they've lost consciousness as a result of that injury.

142

```
9    1    All of us have ways of looking at things that control the
     2    way we lead our lives.  We may think of that as a bias,
     3    but it's there.  In this rather imperfect process we try
     4    to get at that a little bit, and I'm sure you'll all
     5    agree this is an imperfect process.
     6              In that connection, and I don't want
     7    anyone, as Mr. Zilversmit said, to think that any of us
     8    are picking on you.  We're really not, but when we hear
     9    things we feel the necessity within the time alotted to
    10    us to explore it.
    11              Mr. Elwood, I heard you say something about
    12    broadening the authority of the constitution.  Do you
    13    recall that comment?
    14              PROSPECTIVE JUROR:  I do.
    15              MR. ARIAN:  I wonder if you could say any
    16    more about that.  I didn't get your complete thought.
    17              PROSPECTIVE JUROR:  My thought is a lot of,
    18    let's say, somebody's on trial, the jurors sit through
    19    the entire trial, they have a gut feeling that these
    20    defendants are, let's say, guilty, but a lot of
    21    circumstantial evidence has been brought in and it's been
    22    found -- or a legal issue has been brought up, a minor
    23    legal issue that speaks to their innocence.  You're
    24    supposed to think they're innocent even though they're
    25    guilty, because it's a legal argument and it takes
    26    precedence over how you feel.  You're suppose to follow
    27    that rather than now you feel, and you're supposed to
    28    say, yes, in fact, they're innocent when you feel they're
```

143

9

| | |
|---|---|
| 1 | guilty. |
| 2 | MR. ARIAN:  As I hear what you're telling |
| 3 | me, and please correct me, you're saying that as a juror |
| 4 | your gut reaction is very important and you're going to |
| 5 | pay a lot of attention to that? |
| 6 | PROSPECTIVE JUROR:  No, you pay attention |
| 7 | to the facts, but I'm saying that the facts don't |
| 8 | necessarily jibe with, let's say, some legal arguments |
| 9 | that take precedence over the facts.  If you've listened |
| 10 | to all the facts and you say, yes, they are innocent or |
| 11 | guilty, but some legal precedence makes you dismiss that, |
| 12 | then I have a big problem with that. |
| 13 | MR. ARIAN:  You might not be able to do |
| 14 | that? |
| 15 | PROSPECTIVE JUROR:  No, I would not. |
| 16 | MR. ARIAN:  Would that hold if the judge at |
| 17 | the close of the case instructed you that you were to |
| 18 | consider this evidence in a certain way and the |
| 19 | instructions of the judge went counter to the feelings |
| 20 | you just described, would you be forced to go with your |
| 21 | feelings or the higher moral law you found, or would you |
| 22 | feel compelled to follow the instructions of the Court |
| 23 | with respect to that specific issue that was presented? |
| 24 | PROSPECTIVE JUROR:  I really don't know |
| 25 | sitting here right now. |
| 26 | MR. ARIAN:  Would you have trouble with it? |
| 27 | PROSPECTIVE JUROR:  I would have major |
| 28 | problems. |

158

1          MR. ANDREWS:  Was that a trial here on the

2     third floor of the building?

3          PROSPECTIVE JUROR:  Uh-huh.

4          MR. ANDREWS:  Was that by any chance in

5     front of the same judge?

6          PROSPECTIVE JUROR:  No, it was not.

7          MR. ANDREWS:  Was there a feeling on your

8     part that it was as a result of a lack -- something

9     lacking on the part of the police department?

10          PROSPECTIVE JUROR:  No.

11          MR. ANDREWS:  How about the District

12     Attorney?

13          PROSPECTIVE JUROR:  No.

14          MR. ANDREWS:  When you say there was not

15     enough evidence, was there an identification issue.

16          MR. ZILVERSMIT:  I'll object.  He's seeking

17     to find out how this juror voted on that.

18          MR. ANDREWS:  I didn't ask that.

19          THE COURT:  Sustained.

20          MR. ANDREWS:  Did you -- you don't have any

21     problem with serving as a juror today on a similar kind

22     of case?

23          PROSPECTIVE JUROR:  No.

24          MR. ANDREWS:  Thank you, Your Honor, I have

25     nothing further.

26          THE COURT:  At this point does any party

27     wish to enter a challenge for cause?

28          But before you do that, Mr. Elwood, I was

159

1       little unclear about your statements.

2                       Let me just read this question to you

3       again:  It important that I have your assurance that you

4       will without reservation follow my instructions and

5       rulings on the law and will apply that law to the case.

6       To put it differently, whether you approve or disapprove

7       of my instructions, it is your solemn duty to accept as

8       correct my statements of the law.  You may not substitute

9       your own idea of what you think the law ought to be.

10                      Would you be able to follow the law as

11      given by me in this case?

12                      PROSPECTIVE JUROR:  I would, but I may have

13      a problem with that, internal conflict.

14                      THE COURT:  I understand that.  Okay.

15                      Any party wish to exercise a challenge for

16      cause?  Please approach sidebar with the court reporter.

17                      [Following bench conference not reported:]

18                      MR. ZILVERSMIT:  I have three challenges

19      for cause, Judge.  Wiley, Elwood and Lee.

20                      Taking those, Mr. Lee because he obviously

21      doesn't comprehend sufficient language to participate as

22      a juror.

23                      MR. ANDREWS:  Are we doing --

24                      THE COURT:  Cause.

25                      MR. ANDREWS:  -- the whole 24 or just

26      people in the box?

27                      THE COURT:  All 24.

28                      MR. ZILVERSMIT:  So Mr. Lee because of

5

1          The defense talk about, and it's all smoke

2     and mirrors, he talks about all these other people who

3     could want to kill her; it's the 240 pound guy, the 190

4     pound guy, all these people.

5               And yet how does this work?  How do you we

6     get those people on Jerrold Avenue to shoot her in the

7     head?  It does not happen.  How else do you figure it?

8               Robin is wandering down the street and --

6

9     finish the sentence somehow.  You can't.  The only thing

10    that works, the only thing that fits the physical

11    evidence, the testimony of the witnesses, the taped

12    statements, testimony from the experts, the only thing

13    that works is that she's on Jerrold Avenue because she's

14    following Joseph Diggs and Wanda Fain.

15              The only theory that fits about the note,

16    Wanda is not writing this because she's mad, she's

17    writing this for Gregory Brown.  They're all in the same

18    house.  Gregory has got a problem, he's got a court case

19    coming up.  But he knows how to deal with this problem.

20    Because he's got a gullible little girl, and he can get

21    her out to Jerrold Avenue and shoot her and leave her for

22    dead through the other two, and that's it.  That would be

23    easier.  That will be clean.  If they had done the wrong

24    right and killed her, you wouldn't be here today because

25    we wouldn't have any clue.

26              And that's all I have to say.  I want you

27    to look carefully at what you've heard, what you saw.  If

28    somebody said something on that stand, just because we're

1350

6

1    in court, we're in a formal setting, everybody says

2    "please" and "thank you," does not mean you should

3    believe anything you hear here that you wouldn't believe

4    outside those doors?

5                Use your common sense.  You certainly

6    shouldn't believe anything you've heard here unless it

7    fits the evidence you've heard.

8                Based on that I'm asking you to find the

9    defendants guilty of attempted murder of Robin Williams.

10   Because they did it.

11               Conspiracy to commit murder.

12               Assault with a deadly weapon.

13               Possession of a firearm by an ex-felon.

14               Because they did it, for no other reason.

15   They did it, and that's why you're here today.

16               Thank you, Your Honor.

17               THE COURT:  Thank you, Mr. Andrews.

18               At this point, ladies and gentlemen, it's

19   quarter to 5.  I have about ten minutes worth of

20   instructions to read you, the concluding instructions,

21   then I want to go over the verdict forms with you which

22   is going to take some time.

23               Rather than do that today we're going to

24   reconvene tommorow at 10.  I will then finish the

25   instructions, go over the jury forms, and we'll be

26   finished.

27               I know one of you has a problem tomorrow,

28   and hopefully you can change the appointment either later

DECLARATION OF SERVICE

CASE NAME : GREGORY L. BROWN    V. KEN CLARK (WARDEN)

CASE NO. : _____

I declare :

On July 8, 2008, I served the attached Petition For Writ Of Habeas Corpus by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the prison mail collection system at SATF-CORCORAN, in California, addressed as follows :

Clerk, U.S. District Court
Northern District of California
450 Golden Gate Ave., 16th Floor
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7/8/08

Gregory L. Brown
GREGORY L. BROWN



Legal Materials Only

GREGORY L. BROWN
J-82241 (C8-124) 08/24
P.O. Box 5246
CORCORAN, CA 93212

Legal Mail
Confidential

RECEIVED
JUL 1 6 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Clerk, U.S. District Court
Northern District of California
450 Golden Gate Ave, 16 th Floor
San Francisco, CA 94102

H. Ortiz
CCI
H. Ortiz  CCI  7/2/08

Legal Materials Only

Legal Materials Only